An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-26

Filed 3 December 2025

Watauga County, Nos. 24CR000162-940, 24CR219407-940

STATE OF NORTH CAROLINA

v.

JOSHUA PIERRE PERKINS

Appeal by Defendant from judgment entered 30 May 2024 by Judge Todd Pomeroy in Watauga County Superior Court. Heard in the Court of Appeals 28 August 2025.

> *Attorney General Jeff Jackson, by Assistant Attorney General Mia B. Bass, for the State-Appellee.*

> *Center for Death Penalty Litigation, by Sydney J. Calas, for Defendant-Appellant.*

COLLINS, Judge.

Defendant Joshua Pierre Perkins appeals from the trial court's judgment entered upon his convictions for possession of a stolen motor vehicle and attaining habitual felon status. Defendant argues that the trial court erred by denying his motion to dismiss the charge of possession of a stolen motor vehicle because the State

failed to present sufficient evidence to support a finding that he knew or had reason to believe the car was stolen. We find no error.

## I. Background

Defendant was indicted for larceny of a motor vehicle, possession of a stolen motor vehicle, and attaining habitual felon status. The matter came on for trial on 28 May 2024. The evidence presented at trial tends to show the following: Robert Rodriguez wrecked his 2009 black Honda CRV during a snowstorm on 19 January 2024. Robert's father, Mr. Robbins, arrived at the scene, moved the car with the assistance of a Highway Patrol officer, and left it parked on the roadside. Several days later, Mr. Robbins moved the car to a paved portion of the road and left the keys above the visor. By 25 January 2024, the car was gone. After verifying that the car had not been towed, Robert's mother, Mrs. Robbins, reported the car as stolen to the Watauga County Sheriff's Office. Deputy Gracie Brown received the report and verified that no towing record existed.

On 26 January 2024, Mrs. Robbins saw the car travelling in the opposite direction from which she was driving. She turned around and pursued the car. Although the speed limit was forty-five miles per hour, she had to accelerate to approximately seventy miles per hour to keep pace. The car eventually pulled into a driveway, where two individuals "jumped out of the car and ran into the house." Mrs. Robbins saw Defendant get out of the driver's seat and saw a woman get out of the passenger's seat. Mrs. Robbins recognized the woman as Hannah Greer, whom she

knew because Greer's sister was her son's friend. Mrs. Robbins approached the pair and told them the car belonged to her. Greer responded, "this is my friend's car, ma'am[,]" to which Mrs. Robbins responded "no . . . it's not, it's my car." The pair then repeatedly went back and forth between the house and the car, removing bags and clothing from the car, before fleeing on foot across a nearby field.

Law enforcement arrived and confirmed the car belonged to the Robbins. The car had sustained new damage that was not present on 19 or 23 January 2024, including a missing bumper, additional body damage, and makeshift cords tied across the front of the car. The interior contained trash, clothing, and tools consistent with forced entry, including a crowbar, screwdrivers, and a window-suction device.

On 28 January 2024, deputies located a white Ford Ranger abandoned on a logging road. Defendant was seated inside and arrested on outstanding warrants.

The jury acquitted Defendant of larceny of a motor vehicle but convicted him of possession of a stolen motor vehicle. Defendant then pled guilty to attaining habitual felon status. The trial court imposed a sentence of 70 to 96 months' imprisonment. That same day, Defendant filed a written notice of appeal.

On 3 February 2025, Defendant filed a petition for a writ of certiorari with this Court, acknowledging that his written notice of appeal was defective.

## II. Discussion

Defendant argues that the trial court erred by denying his motion to dismiss the charge of possession of a stolen motor vehicle because the State failed to present

sufficient evidence to support that Defendant knew or had reason to believe the car was stolen.

## A. Appellate Jurisdiction

As a preliminary matter, we address our jurisdiction to hear this appeal.

"Notice of appeal shall be given within the time, in the manner and with the effect provided in the rules of appellate procedure." N.C. Gen. Stat. § 15A-1448(b) (2024). An appeal in a criminal case may be taken by either "giving oral notice of appeal at trial" or by "filing [written] notice of appeal with the clerk of superior court and serving copies thereof upon all adverse parties within fourteen days after entry of the judgment or order . . . ." N.C. R. App. P. 4(a). A written notice shall specify the party taking the appeal, "designate the judgment or order from which appeal is taken and the court to which appeal is taken," and be signed by the appealing party's counsel of record or the party, if proceeding pro se. N.C. R. App. P. 4(b).

Here, immediately following sentencing on 30 May 2024, Defendant's counsel filed a written Notice of Appeal from Defendant's convictions and included a request for court-appointed appellate counsel. Defendant's notice of appeal specifies he is the party taking the appeal; designates he is appealing from his convictions for possession of a stolen motor vehicle and attaining the status of a habitual felon, and includes the case file numbers; and is signed by Defendant's counsel and Defendant. "[W]hile the notice of appeal fails to designate the court to which his appeal is taken, as required by Rule 4(b), '[D]efendant's intent to appeal is plain[.]'" *State v. Rouse*,

234 N.C. App. 92, 94 (2014) (quoting *State v. Ragland*, 226 N.C. App. 547, 553, *disc. review denied*, 367 N.C. 220 (2013)). By Appellate Entries signed by the trial court the same day as Defendant's Notice of Appeal was filed, the trial court found that "[D]efendant has given Notice of Appeal to the N.C. Court of Appeals[.]" "[A]nd since this Court is the only court with jurisdiction to hear [D]efendant's appeal, it can be fairly inferred [D]efendant intended to appeal to this Court." *Id.*; *see* N.C. Gen. Stat. §§ 7A-27(b)(1) (2024) and 15A-1444(a1) (2024). "Having examined [D]efendant's notice of appeal, we find its contents sufficient to satisfy the jurisdictional requirements of N.C. R. App. P. 4(b)." *Id.*

While the record on appeal does not contain a "proof of service" showing the Notice of Appeal was served on the District Attorney's Office within fourteen days of its filing,[1] "[i]t is the *filing* of the notice of appeal that confers jurisdiction upon this Court, not the *service* of the notice of appeal." *State v. Golder*, 257 N.C. App. 803, 804 (2018), *aff'd as modified by* 374 N.C. 238 (2020) (citation omitted). "The State has

---

[1] The record on appeal is replete with proof that the District Attorney's office had timely and repeated notice of Defendant's appeal. The Appellate Entries contain the assistant clerk of superior court's certification that a copy of the Appellate Entries – finding that "[D]efendant has given Notice of Appeal to the N.C. Court of Appeals" – was served on counsel for all parties and the Appellate Defender's Office on 3 June 2024, within four days of the Notice of Appeal's filing. Furthermore, the Appointment of Appellate Counsel by the Appellate Defender indicates it was served on the District Attorney's Office. The Certificate of Transcript Delivery indicates that the hearing transcripts "Ordered/Requested by Defendant" were delivered to the District Attorney's Office. The Certificate of Proposed Record indicates the proposed record on appeal was served on the District Attorney's Office, and the Certificate of Record Settlement indicates the record was settled by operation of law pursuant to Rule 11. *See* N.C. R. App. P. 11(b) ("If all appellees within the times allowed them either serve notices of approval or fail to serve either notices of approval or objections, amendments, or proposed alternative records on appeal, appellant's proposed record on appeal thereupon constitutes the record on appeal.").

entered no objection to any lack of service and has participated in this appeal, thereby waiving service of Defendant's notice of appeal." *Id.*

For these reasons, we have jurisdiction to hear this appeal, and we dismiss as moot Defendant's conditional petition for writ of certiorari.

## B. Standard of Review

"This Court reviews the trial court's denial of a motion to dismiss de novo." *State v. Smith*, 186 N.C. App. 57, 62 (2007) (italics and citation omitted). Under de novo review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33 (2008) (quotation marks and citations omitted). "In ruling on a motion to dismiss, the trial court is required to view the evidence in the light most favorable to the State, making all reasonable inferences from the evidence in favor of the State." *State v. Kemmerlin*, 356 N.C. 446, 473 (2002) (citation omitted). "[T]he trial court must determine whether there is substantial evidence of each essential element of the crime." *Id.* (quotation marks and citation omitted). "Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Mann*, 355 N.C. 294, 301 (2002) (citation omitted). If substantial evidence exists that the charged offense was committed and that the defendant was the perpetrator of said offense, "the case is for the jury [to decide] and the motion to dismiss should be denied." *State v. Locklear*, 322 N.C. 349, 358 (1988) (citation omitted).

## C. Possession of a stolen motor vehicle

A person is guilty of possession of a stolen motor vehicle in violation of N.C. Gen. Stat. § 20-106 if he (1) possesses, (2) a stolen motor vehicle, and (3) knew or reason to believe that the vehicle has been stolen. *State v. Bailey*, 157 N.C. App. 80, 83-84 (2003). Here, Defendant concedes that the evidence is sufficient to support a finding that he possessed the stolen car, but he argues that the evidence is insufficient to show that he knew or had reason to believe that the car was stolen. We disagree.

The State may rely on the doctrine of recent possession to show that a defendant knew or had reason to believe that property was stolen. *State v. McQueen*, 165 N.C. App. 454, 459 (2004). Under the doctrine of recent possession, a presumption arises that "a person in possession of recently stolen property is guilty of its wrongful taking . . . ." *Id.* (citations omitted). The presumption is not conclusive but is treated as an evidentiary fact that the jury may consider along with all other evidence to determine whether the State has proven guilt beyond a reasonable doubt. *See State v. Barnes*, 345 N.C. 184, 241 (1997); *State v. Washington*, 277 N.C. App. 576, 583 (2021). For the doctrine of recent possession to apply, the State must show: "(1) the property was stolen, (2) defendant had possession of the property, subject to his control and disposition to the exclusion of others, and (3) the possession was sufficiently recent after the property was stolen, as mere possession of stolen property is insufficient to raise a presumption of guilt." *McQueen*, 165 N.C. App. at 459 (citations omitted).

Furthermore, the element of knowledge may be established through other circumstantial evidence. *Bailey*, 157 N.C. App. at 84. Circumstances permitting a reasonable inference that the possessor knew, or had reason to believe, that the property was stolen include flight, inconsistent statements, and alterations to the property. *State v. Bracey*, 297 N.C. App. 136, 140-41 (2024). An accused's high-speed flight from police officers, including driving recklessly, may be used as evidence of consciousness of guilt and support the inference that the defendant knew or had reason to believe the car was stolen. *State v. Parker*, 316 N.C. 295, 304 (1986). Inconsistent statements to law enforcement upon apprehension may support an inference that the defendant knew or had reason to believe that the property was stolen. *Bracey*, 297 N.C. App. at 140-41. Finally, alterations to the car, such as visible damage or tampering, can further reinforce the inference that the defendant possessed knowledge of the property's stolen nature. *Id.* at 141.

In *Bracey*, the defendant engaged in reckless driving, reaching speeds of more than ninety-five miles per hour in a sixty mile-per-hour zone. *Id.* at 137. After abandoning the car, the defendant fled the scene on foot and was later apprehended by law enforcement. *Id.* Upon questioning, he provided inconsistent statements regarding his possession and knowledge of the car, and further investigation revealed that the car was damaged. *Id.* at 138. This Court held that these circumstances, including flight, inconsistent statements, and the condition of the car, supported a

reasonable inference that the defendant knew or had reasonable grounds to believe that the car was stolen. *Id.* at 141-42.

Here, the State's evidence tends to show that Mr. Robbins moved the car on 23 January 2024, and it was reported stolen two days later. The key, which Mr. Robbins had left above the car's visor, was no longer there. On 26 January 2024, while driving, Mrs. Robbins recognized their car traveling in the opposite direction. She began to follow the car, at which point the driver attempted to evade apprehension by accelerating to approximately seventy miles per hour in a forty-five mile-per-hour zone. The car was eventually driven to a residence, where Mrs. Robbins saw Defendant get out of the driver's seat and help Greer remove clothing and other items from the car. Shortly thereafter, Defendant and Greer left the residence on foot, and Defendant was later apprehended by law enforcement.

This evidence satisfies the doctrine of recent possession by showing that the Robbins' stolen car was in Defendant's possession twenty-four hours after the Robbins reported the theft. *See Barnes*, 345 N.C. at 240; *McQueen*, 165 N.C. App. at 459. Furthermore, other evidence supports the inference that Defendant knew, or had reason to believe, that the car had been stolen. *See State v. Vaughn*, 130 N.C. App. 456, 458 (1998). Like the defendant in *Bracey*, Defendant engaged in erratic driving behavior while being pursued by Mrs. Robbins, accelerating to nearly thirty miles per hour above the speed limit. Defendant's manner of driving supports the inference that he knew the car was stolen. *See Bracey*, 297 N.C. App. at 140.

Further similar to *Bracey*, Defendant subsequently abandoned the car and fled on foot when confronted. This conduct is "evidence of consciousness of guilt . . . ." *Parker*, 316 N.C. at 304. Additionally, the car's interior contained burglary tools, including suction devices, screwdrivers, and a crowbar; all items a thief may use to break into a car. *State v. Glaze*, 24 N.C. App. 60, 64 (1974) (finding that incriminating circumstances, including possession of burglary tools within a vehicle, can support an inference of knowledge). When viewed in combination, the evidence of Defendant's immediate possession of the stolen car, his efforts to evade detection, the missing car key, and the presence of burglary tools support that Defendant knew the car had been stolen. *Parker*, 316 N.C. at 304; *Bracey*, 297 N.C. App. at 140; *Glaze*, 24 N.C. App. at 64.

## III. Conclusion

Because the State presented substantial evidence that Defendant knew or had reason to believe the car was stolen, the trial court did not err in denying the motion to dismiss.

NO ERROR.

Judges ARROWOOD and FREEMAN concur.

Report per Rule 30(e).