STATE OF NORTH CAROLINA v. WILFORD W. KILGORE

No. 8321SC201

(Filed 6 December 1983)

1. **Constitutional Law § 50— speedy trial—no denial of right to**
    In a prosecution for obtaining money by false pretense, defendant failed to show that he was denied his constitutional right to a speedy trial even though a total of 123 days lapsed between the date of arrest and the date the trial began. While at no time did defendant initiate or concur in the delay in the trial of his case, defendant has not shown that the delay was due to the neglect of the prosecution, that he could have been tried earlier, or that he was prejudiced by the lapse of time. G.S. 15A-701(a1)(1).

2. **Criminal Law § 34.7— evidence of other offenses—properly admitted to prove intent, design, or guilty knowledge**
    In a prosecution for obtaining money by false pretense, the trial judge properly allowed evidence of similar transactions on the part of the defendant since the evidence was offered for the purpose of showing intent and design.

3. **False Pretense § 3— obtaining property by false pretense—sufficiency of evidence**
    In a prosecution for obtaining money by false pretense, the trial judge properly denied defendant's motion to dismiss where the evidence tended to show that defendant indicated to a business owner that he was an authorized agent of Ambassadors of the World, and he was not; that defendant's representation that he was a duly authorized salesman was a purposeful deception pursuant to which he secured $180.00 which he had no intention of turning over to the Ambassadors of the World; that the owner of the company gave defendant the $180.00 with the understanding that defendant was an agent of the Ambassadors of the World; and that defendant by a purposeful misrepresentation of agency induced his victim to part with $180.00.

APPEAL by defendant from *DeRamus, Judge.* Judgment entered in Superior Court of FORSYTH County 5 October 1982. Heard in the Court of Appeals 25 October 1983.

Approximately three weeks prior to 31 March 1982, defendant signed an independent contractor agreement with Ambassadors of the World, a discount marketing organization. As an independent contractor, defendant became a representative with Ambassadors' sales associates. A $31.00 representative's fee was involved in being approved as a representative with the association. When defendant's $31.00 check was returned twice for insufficient funds, Ambassadors of the World mailed the defendant notice that he would no longer be a representative after 31 March 1982 if the association did not receive proper payment. Ambassadors of the World received no payment from defendant.

On 9 April 1982, the defendant indicated that he was an authorized representative of Ambassadors of the World to James Hudgins, an agent and part-owner of Preferred Business Gas, Incorporated. Mr. Hudgins signed a business application for membership with Ambassadors of the World and paid defendant a $180.00 membership fee. For reasons which are in dispute, Mr. Hudgins never received the represented benefits his payment to defendant was to acquire.

On 7 June 1982 defendant was arrested on a warrant charging him with obtaining money by false pretense. Probable cause was found on 1 July 1982, and a true bill entered 16 August 1982. On 24 September 1982 defendant filed a petition for a speedy trial, and trial began on 5 October 1982. Defendant was convicted of obtaining a check in the sum of $180.00 under false pretenses and appeals judgment of imprisonment for a term of three years.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Thomas B. Wood for the State.*

*Frye, Booth, Porter, and Van Zandt, by John P. Van Zandt, III for defendant appellant.*

HILL, Judge.

[1]    Defendant first contends the trial judge erred in denying his motion to dismiss based on the denial of his constitutional right to a speedy trial. We do not agree.

The North Carolina Supreme Court in *State v. Neas*, 278 N.C. 506, 510-11, 180 S.E. 2d 12, 15 (1971), stated that "[t]he probability

of a delay is inherent in every criminal action, and the constitutional guarantee does not preclude good faith delays which are reasonably necessary for the State to present its case. The proscription is against purposeful or oppressive delays which the State could have avoided by reasonable effort." We are aware that every lawsuit is singular as to its facts, and reasonableness plays a part in the preparation and trial of each case. The facts in this case fail to show any purposeful or oppressive delay.

The defendant was wanted in four or five other counties, and the district attorney had agreed that he be tried first in Forsyth County. Although the warrant was not served on defendant at the time he was taken into custody on 4 June 1982, he was in effect under arrest from that time. The probable cause hearing was scheduled ten days after defendant was transferred to Forsyth County, and continued two weeks on motion of the State. Forty-six days lapsed thereafter to the date a true bill was returned on 16 August 1982. Defendant was arraigned the following week. He filed a petition for speedy trial a month later. In less than two weeks trial began. A total of 123 days lapsed from the date of arrest and the date the trial began.

We note defendant does not argue that he was denied a speedy trial under the provisions of G.S. 15A-701(al)(1), but addresses the matter as a constitutional matter. This provision of our "Speedy Trial Act" provides a defendant shall be brought to trial "[w]ithin 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, *whichever occurs last.*" (Emphasis added.) Clearly, defendant has no rights thereunder.

The ends of justice afforded by a speedy trial are not best served when speed is placed before thorough and deliberate preparation for trial. While at no time did defendant initiate or concur in the delay in the trial of his case, defendant has not shown that the delay was due to the neglect of the prosecution, that he could have been tried earlier, or that he was prejudiced by the lapse of time. "The burden is on an accused who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution." *State v. Johnson,* 275 N.C. 264, 269, 167 S.E. 2d 274, 278 (1969).

[2]   Defendant next contends the trial judge erred by permitting the State to introduce evidence of activities of the defendant which defendant argues are both uncharged and unrelated to the crime for which he was indicted. The facts upon which defendant bases this contention are not in dispute:

Defendant took the stand in his defense, and moved for a motion in limine to exclude any activities or similar occurrences taking place after 9 April 1982. The trial judge denied the motion. The defendant described his pattern of operation with regard to his business and relationship with the Ambassadors of the World. The court then permitted the prosecuting attorney to cross-examine the defendant concerning his procedure of operation involving the sale of another contract to an auto parts store in Winston-Salem for the Ambassadors of the World.

The trial judge did not err in allowing the State to offer evidence of similar transactions on the part of defendant. When the purpose of offering evidence of other independent offenses is to prove intent, design, or guilty knowledge, the evidence is admissible. *State v. Walton*, 114 N.C. 783, 18 S.E. 945 (1894); *State v. Hill*, 45 N.C. App. 136, 263 S.E. 2d 14 (1980). This evidence concerning the procedure of operation involving the sale of another contract for the Ambassadors of the World was relevant and admissible on the issues of intent and design in the offense of obtaining money by false pretenses. The judge, likewise, committed no error thereafter in his charge concerning this evidence.

[3]   Finally, we find no error by the trial judge in denying defendant's motion to dismiss at the close of the State's evidence and at the close of all the evidence for failure to meet its burden of proof. The crime of obtaining property by false pretenses pursuant to G.S. 14-100 is defined as follows: (1) a false representation of a subsisting fact or a future fulfillment or event, (2) which is calculated and intended to deceive, (3) which does in fact deceive, and (4) by which one person obtains or attempts to obtain value from another. *State v. Cronin*, 299 N.C. 229, 242, 262 S.E. 2d 277, 286 (1980). *See State v. Davenport*, 227 N.C. 475, 42 S.E. 2d 686 (1947). The evidence will withstand a motion to dismiss if there is substantial evidence of all essential elements of the offense. *E.g., State v. Brackett*, 306 N.C. 138, 291 S.E. 2d 660 (1982); *State v. Locklear*, 304 N.C. 534, 284 S.E. 2d 500 (1981). We ex-

amine the sufficiency of the evidence to establish the elements of the crime of false pretenses.

(1) *A false representation of a subsisting fact or a future fulfillment or event.* The testimony of the State's witnesses, Hudgins and Henderson, denotes that the defendant made a false representation of a subsisting fact or future fulfillment or event when he indicated on 9 April 1982 to Hudgins that he was an authorized agent of Ambassadors of the World. In fact, his authorization had been terminated in writing on 31 March 1982 for failure to pay a $31.00 agent's fee.

(2) *A false representation calculated and intended to deceive.* The defendant's representation that he was a duly authorized salesman for Ambassadors of the World was a purposeful deception of the State's witness, Hudgins, part-owner of Preferred Business Gas, in order to secure the $180.00 membership fee. The defendant admitted that at the time he accepted the $180.00, he had no intention of turning the money or contract over to the Ambassadors. The defendant contends his intention was to cash the check for his immediate expenses, and then turn over the money and the contract when he became financially able to do so.

(3) *A false representation which does in fact deceive.* Hudgins testified that he wrote a check to the defendant rather than the company and signed the contract with the understanding from the defendant that membership recognition and materials would be forthcoming from the company. Although the defendant had no authorization to sell, he nevertheless did not turn over the contract or check to the company headquarters pursuant to his company's standard operating procedure. Thus, the victim got nothing for his money.

(4) *A false representation by which one person obtains or attempts to obtain value from another.* According to Hudgins' testimony and the defendant's own evidence, the defendant by a purposeful misrepresentation of agency induced his victim to part with $180.00. The defendant used this money for his own purposes with no intention of turning these proceeds of the contract over to the home office. We conclude there was ample evidence to overcome defendant's motions to dismiss.

No error.

Judges ARNOLD and BRASWELL concur.